(100 App. Div. 463)

SPENCER v. HUNTINGTON et al.

(Supreme Court, Appellate Division, First Department. January 6, 1905.)

1. DISMISSAL OF COMPLAINT—SUBSEQUENT ORDERS—APPEAL.
Where, after a referee made a report dismissing the complaint, plaintiff moved to amend, and to recommit the report to the referee for further findings, orders denying such motions were not intermediate orders, reviewable on appeal from the final judgment, within Code Civ. Proc. § 1316,. and were therefore reviewable only by a direct appeal therefrom.

2. CONTRACTS UNDER SEAL—PERSONS NOT PARTIES—LIABILITY.
Where defendants' decedents were not parties to or mentioned in a contract under seal for the purchase of certain stocks, alleged to have been made for their benefit by the person named in and who signed the same, they were not liable thereon.

3. SAME—PRIOR NEGOTIATIONS—WRITTEN CONTRACT—MERGER.
Where plaintiff's decedent at first objected to the execution of a sealed contract for the purchase of certain stocks by P. in his individual capacity, on the ground that he was acting as agent for defendants' decedents, but thereafter consented thereto, the prior negotiations creating a sale to defendants' decedents, and not to P., were merged in the written contract.

Appeal from Judgment on Report of Referee.

Action by George E. Spencer against Arabella D. Huntington and others, as executrix, etc., of Collis P. Huntington, deceased. From a judgment entered on a referee's report dismissing the complaint, and from two orders, one of which denied a motion to amend the complaint, and the other to remand the report to the referee for further findings, plaintiff appeals. Affirmed.

The following is Referee Cohen's opinion, referred to by the concurring judge:

On the 19th day of November, 1888, one McNulta entered into an agreement in writing and under seal with one Pardee, whereby McNulta, in consideration of the sum of thirty-two thousand five hundred dollars ($32.500), agreed to sell eight hundred (800) shares of stock of the San Francisco, Clear Lake & Humboldt Railroad Company, and two thousand (2,000) shares of stock of the Clear Lake Improvement Company. The agreement acknowledged the receipt by McNulta of the sum of fourteen thousand one hundred dollars ($14,100), and recited the sale and delivery of the said shares to Pardee, who covenanted to pay the balance of eighteen thousand four hundred dollars ($18,400) within 30 days, during which time McNulta was to discharge both companies of all debts and obligations. The time to clear the properties was extended in order to adjust a certain claim, known as the Davis claim. When McNulta delivered the stipulation discharging the Davis claim, he demanded, not from Pardee, who was a party to the agreement, but from Huntington and Crocker, who were strangers to it, the said balance, which was refused. Thereupon McNulta commenced this action against Huntington and Crocker to recover the said balance. At the time of the commencement of the action the defendants were Collis P. Huntington and Charles F. Crocker. Thereafter Crocker died, and the plaintiff was permitted to proceed separately against Huntington. Still later Huntington died, and the action was continued against the present defendants as his executrix and executors. McNulta having also died during the pendency of the action, Laura McNulta was appointed "administratrix to collect" by the probate court of Cook county, Illinois. Subsequently she was authorized by the said court to assign this cause of action to the above-named plaintiff.

In the consideration of the case there is presented at the very outset the question as to the plaintiff's right to recover against a party who is nowhere

mentioned in the written, sealed instrument. This plaintiff does not sue, as the complaint is drawn, in assumpsit. He alleges that a contract was made with Huntington and Crocker, which contract was reduced to writing and signed and sealed by Pardee, acting as the agent of Huntington and Crocker; that Pardee was an agent of said Huntington and Crocker, and that he subscribed said agreement as their agent, for them and in their behalf, with full power and authority so to do; and that said agreement was in fact the agreement of said Huntington and Crocker. By express allegation he makes the written, sealed instrument part of the complaint. Under this state of facts, and under this form of pleading, it is the settled law of this state that the plaintiff could not maintain this action against Huntington while living, or against his representatives after his death. The law upon this precise question is clearly declared in the leading case of Briggs v. Partridge, 64 N. Y. 357, 21 Am. Rep. 617, reaffirmed in Kiersted v. Orange & Alexandria R. Co., 69 N. Y. 343, 25 Am. Rep. 199; Schaefer v. Henkel, 75 N. Y. 378; Henricus v. Englert, 137 N. Y. 488, 33 N. E. 550; Whitehouse v. Drisler, 37 App. Div. 525, 56 N. Y. Supp. 95; Williams v. Magee, 76 App. Div. 512, 78 N. Y. Supp. 550.

That the precise point here involved was decided by these cases might be shown by extracts from each of the opinions. It will be sufficient for our purpose, however, to quote the language of Earl, J., in Henricus v. Englert, supra: "Where an instrument is under seal, no person can sue or be sued to enforce the covenants therein contained, except those who are named as parties to the instrument, and who signed and sealed the same." As this is the law, it was error to receive evidence of the facts tending to show that Huntington and Crocker were the actual principals. But such evidence was admitted, so that upon an appeal, if any be taken, all the facts might be before the appellate tribunals. The evidence so improperly admitted proved that the negotiations of purchase and sale of the shares of stock in the corporations mentioned were had by McNulta with Huntington and Crocker; that between these three persons the terms of the contract, as subsequently reduced to writing, were agreed upon, and that, after being written out, Pardee was named as the party of the second part to the agreement upon the suggestion of Huntington and Crocker; that Huntington and Crocker stated to McNulta that the name written in the contract made no difference as to their liability, and that Pardee was acting as their agent, and that the agreement was, to all intents and purposes, the agreement of Huntington and Crocker; and furthermore, subsequent to the signing of the agreement and the payment of the fourteen thousand one hundred dollars ($14,100), negotiations were had between McNulta and Huntington as to the liens and claims upon the property; and that, when the final breach came, that breach was openly declared by Huntington.

Plaintiff's counsel, in a full and able brief, argues that this testimony was properly admitted. In support of his position he relies upon text-books and upon precedents in other jurisdictions. Huffcut on Agency, § 188; Mechem on Law of Agency, § 702; Lancaster v. Knickerbocker Ice Co., 153 Pa. 427, 26 Atl. 251; Stowell v. Eldred, 39 Wis. 614; Love v. S. N. L. W. & M. Co., 32 Cal. 639, 91 Am. Dec. 602. The authors and cases cited bear out his contention, but they go further in narrowing the parol evidence rule, or in overturning the substantive law that such a claim is not tenable, than do the courts of this state. Within our own jurisdiction, it is true, there are authorities tending to modify the import of a seal. Blewitt v. Boorum, 142 N. Y. 357, 37 N. E. 119, 40 Am. St. Rep. 600; Bridger v. Goldsmith, 143 N. Y. 424, 38 N. E. 458. But these cases are not decisive of the question here involved, and, so far as that question is concerned, are mere dicta. They do not pass upon the right of substituting for a party named in a sealed instrument another and different party, who is not mentioned therein. They do minimize the import of a seal, and regard it, when attached to a contract that is valid without it, as mere surplusage. It is also true that a seal is no longer in the law the fetish that it once was, but it still stands for something. By statute, it is presumptive evidence of a sufficient consideration, which may be rebutted, as if the instrument was not sealed; its presence makes the document to which it is attached a specialty instead of a simple contract; and an action may be brought upon a sealed instrument within twenty years—fourteen years

after the statute of limitations might be successfully invoked against the same contract unsealed.

But conceding, as we must, that this contract is absolutely valid without a seal, and regarding the seal as of little moment, the plaintiff's position is not bettered. In Schaefer v. Henkel, supra, a lease was executed by one Brown, who was described in the written document as "agent," and his principals endeavored to maintain an action against the lessee named in the instrument, and the court there said: "It is therefore settled law that in order to take a case out of the general rule, where a contract is one which is valid without a seal, and the seal is therefore of no account, it must appear that the contract was really made on behalf of the principal from the instrument, and that the party derived benefits from and accepted and confirmed it by acts on his part." Judge Miller concludes his opinion with the statement that "the principle has long been settled by authority that to render an instrument of this nature, signed by an agent in his own name, binding on the principal, it must appear from the contract itself that it purports to be made by the principal, before it can be considered as obligatory upon the principal."

Proceeding further than a mere disregard of the seal, the plaintiff attempts to disregard the writing itself, except as evidence of a contract between McNulta, on the one hand, and Huntington and Crocker, on the other. This, however, cannot be done under a complaint which pleads and rests upon the written contract itself.

Going still further, the plaintiff seeks to maintain his action upon the theory of an estoppel, or, what is practically the same thing, an implied obligation arising from the facts in the case. The difficulty here is that the facts necessary to invoke either doctrine cannot be established in this action, since the objections taken by the defendant to the introduction of any evidence implicating Huntington and Crocker were well taken.

A conclusion favorable to the defendants on the main question in this action having thus been reached, it is not strictly necessary to consider other objections that have been raised by the defendants. As, however, they have been persistently urged and fully considered, it may not be amiss to notice them briefly:

The point is made that the plaintiff has not legal capacity to sue, on the ground that the letters of administration to the plaintiff's assignor authorized the administratrix only to collect and secure the property of John McNulta "in this state" (Illinois), and that, the situs of the present claim being without the state of Illinois, she was given no power over it, and that therefore her assignee is without capacity to sue. The court which granted the letters of administration expressly authorized the assignment of this cause of action to the plaintiff herein, and prima facie, therefore, by virtue of the direction of the court, the plaintiff has such capacity. Moreover, by the terms of the will of John McNulta, his personal property passed to the plaintiff's assignor, who consequently had authority to make the assignment independently of the authority conferred by the court.

It is also asserted by the defendants that the Davis claim was not discharged at the time of the commencement of this action. The facts are that a stipulation dismissing that action by the plaintiff's attorney was delivered prior to the time of the commencement of this action, and knowledge thereof brought home to Huntington. No formal order was entered thereon until after the commencement of this action. In my judgment, there was a substantial performance pursuant to the terms of the contract, which provided that the balance of eighteen thousand four hundred dollars ($18,400) should be withheld out of the purchase price until the final adjustment of said claim.

On the hearing the defendants introduced in evidence the record of an action commenced by Go Look v. The San Francisco, Clear Lake & Humboldt Railroad Company and others, begun in the superior court of the city and county of San Francisco, state of California, August 16, 1889. A summons and writ of attachment were issued in the action, but the summons was never served on any of the defendants. Subsequently, on motion, on June 29, 1903, the action was dismissed. At the time the contract was signed, no reference to the Go Look claim was made; nor was it known to exist by either of the parties hereto, or by Huntington and Crocker, so far as the proof shows. At

the time the demand was made for the balance alleged by the complaint herein to be due, no reference to the Go Look action was made. Under these circumstances, as well as under the Code of Civil Procedure and the statutes of California, there is no ground for holding that the Go Look action was an outstanding debt or obligation, or a contested claim, within the terms of the agreement.

The complaint herein must be dismissed, with costs to the defendant.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Herbert Barry, for appellant.

Maxwell Evarts, for respondents.

McLAUGHLIN, J. This appeal is from a judgment entered on the report of a referee, to whom the issues were sent to hear and determine, dismissing the complaint, and from two orders, one of which denied a motion to amend the complaint, and the other to send the report back to the referee for further findings.

The facts are not complicated, and, so far as material to the question presented, are substantially as follows: In November, 1888, one John McNulta, the original plaintiff in the action, entered into a contract under seal with one Pardee to sell and deliver to him 800 shares of the stock of the San Francisco, Clear Lake & Humboldt Railroad Company, and 2,000 shares of the Clear Lake Improvement Company, for the consideration of $32,500. At the time of the execution of the contract, $14,100 was paid, and the balance agreed to be paid within 30 days thereafter, if certain claims which had been made against the railroad and improvement companies had then been satisfied. All of the claims were not satisfied and discharged within the time specified in the contract, but they subsequently were, and, Pardee having failed and neglected to pay the balance agreed, this action was brought against Collis P. Huntington and Charles F. Crocker to recover such sum; the plaintiff alleging in his complaint that they were liable, inasmuch as it was understood and agreed at and immediately prior to the execution of the contract that Pardee acted simply as their agent. After the action had been commenced, Crocker and Huntington died, but it was revived against Huntington's executors, and permitted to proceed against them alone. McNulta also died, but an order was made permitting it to be continued in the name of the present plaintiff. During the course of the trial, proof was offered tending to show that Pardee, in executing the contract, did in fact act for Crocker and Huntington; but the referee, as appears from his opinion, held that error was committed in this respect, and, while he permitted it to remain in the record, did not consider it in determining the rights of the parties. He held that the contract being under seal, and Huntington's name not being referred to or mentioned therein, he or his representatives could not be compelled to respond in damages for a breach, and he accordingly dismissed the complaint. After he had made a report to this effect, the plaintiff moved to amend the complaint, which motion was denied, as was also a motion to recommit the report for further findings, both of which orders the plaintiff seeks to review on this appeal.

The appeal, in so far as it is taken from these orders, is irregular, and for that reason should be dismissed. They are not intermediate

orders in the sense in which that term is used in section 1316 of the Code, which enables an order to be reviewed on appeal from a final judgment. An intermediate order is one made between the commencement and termination of the action. Both orders were made after the referee had made his report, and a review, therefore, could only be had by a direct appeal from them. The filing of the referee's report was the termination of the action, which finally and conclusively determined the rights of the parties, and nothing thereafter remained except to enter and enforce the judgment.

This brings us to a consideration of the main question, and that is whether the respondents, as the representatives of Mr. Huntington, can be held liable for the breach of a contract under seal, when his name is not mentioned or referred to therein. I am of the opinion that the conclusion reached by the referee was the proper one, and to hold otherwise would be contrary to an unbroken line of decisions in this state. A case directly in point is Briggs et al. v. Partridge et al., 64 N. Y., 357, 21 Am. Rep. 617. There the plaintiffs entered into an executory contract under seal with one Hulburd for the purchase of land. The complaint alleged that, in executing the contract, Hulburd acted as the agent of the defendants. Plaintiffs' counsel, in opening the case at the trial, stated that the agreement on which the plaintiffs relied was in writing; that it was made by the plaintiffs as vendors, and Hulburd as vendee; that it did not show but that Hulburd was a principal party, inasmuch as it was signed and sealed by him individually; that the name of the defendants did not appear in the instrument, but that the plaintiffs would prove that Hulburd, when he executed the contract, was acting solely for and under the direction of Partridge, who paid or caused to be paid the first payment under the contract; that Hulburd was the agent and trustee of Partridge in the transaction. The defendants moved to dismiss the complaint upon the opening, which motion was granted; and, in reviewing the disposition thus made, the Court of Appeals, speaking through Judge Andrews, said:

"We find no authority for the proposition that a contract under seal may be turned into the simple contract of a person not in any way appearing on its face to be a party to or interested in it, on proof dehors the instrument that the nominal party was acting as the agent of another, and especially in the absence of any proof that the alleged principal has received any benefit from it, or has in any way ratified it; and we do not feel at liberty to extend the doctrine applied to simple contracts executed by an agent for an unnamed principal so as to embrace this case. The general rule is declared by Shaw, C. J., in Huntington v. Knox, 7 Cush. 374: 'Where a contract is made by deed under seal on technical grounds, no one but a party to the deed is liable to be sued upon it, and therefore, if made by an attorney or agent, it must be made in the name of the principal, in order that he may be a party, because otherwise he is not bound by it.'"

This case was cited with approval and followed in Kiersted et al. v. O. & A. R. Co., 69 N. Y. 343, 25 Am. Rep. 199; Judge Andrews again saying:

"The form of the lease made him the lessee, and the covenant in a deed can only be enforced against a party who upon the face of the instrument is the covenantor, although it appears by extrinsic proof that he acted as the agent for another."

In Schaefer et al. v. Henkel, 75 N. Y. 378, the rule was again announced. There an action was brought upon a lease under seal executed by "J. Romaine Brown, agent," as lessor, and by defendant as lessee. The action to recover the rent due was brought by the principal, and not by the agent who signed the lease. Defendant had a judgment upon the ground that plaintiffs were not parties to the lease, and therefore could not sue upon its covenants. The judgment was affirmed; Judge Miller, delivering the opinion, saying:

"The plaintiffs were not parties to the lease upon which this action was brought. It was not signed by them. Their names did not appear in it, and there was nothing in the lease to show that they had anything to do with or any interest in the demised premises, or the execution of the lease, or that it was executed in their behalf. * * * The rule seems to be quite well established that in general an action upon a sealed instrument of this description must be brought by and in the name of a person who is a party to such instrument, and that a third person or a stranger to the instrument cannot maintain an action upon the same. The question presented has been the subject of frequent consideration in the courts and I think it is established in this state that where it distinctly appears from the instrument executed that the seal affixed is the seal of the person subscribing who designates himself as agent and not the seal of the principal, that the former only is the real party who can maintain an action on the same. He alone enters into the covenants and is liable for any failure to fulfill and he only can prosecute the other party. * * * The principle has long been settled by authority that to render an instrument of this nature signed by an agent in his own name binding on the principal, it must appear from the contract itself that it purports to be made by the principal before it can be considered as obligatory upon the principal."

These cases were all referred to and cited with approval in Henricus v. Englert, 137 N. Y. 488, 33 N. E. 550, where Judge Earl, speaking for the entire court, said:

"Where an instrument is under seal, no person can sue or be sued to enforce the covenants therein contained, except those who are named as parties to the instrument, and who signed and sealed the same."

The rule laid down in the foregoing authorities has frequently and uniformly been applied by this court. Thus is Farrar v. Lee, 10 App. Div. 130, 41 N. Y. Supp. 672, an action was brought upon a bond given to the plaintiff's assignor by one Tanner. The complaint alleged that Tanner made and delivered the bond "as and for the act of the defendant Homer Lee, and for the latter's sole benefit," and that Tanner was wholly the agent of Lee, who received from Tanner, for his own use, the money received on the bond, and that the debt evidenced by the bond was the debt of Lee, and not that of Tanner. The defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was overruled, but on appeal the judgment was reversed and the demurrer sustained; the court saying:

"Whatever liability Tanner assumed, it was measured by the instrument under seal which he gave, and any preliminary contract was merged in that instrument, so that, after the giving of that bond, Whitehead had no right of action against Tanner, except such as was assured to him by the obligation which he had taken. Under those circumstances, it is thoroughly settled in this state that he could not maintain an action against any one except the person who signed and sealed it. As the bond was signed by Tanner in his own name, and not as agent for Lee, it was not competent by parol evidence

or in any way to transfer from Tanner to Lee the obligation which Tanner had assumed personally, upon the theory that he was acting as the agent for Lee. This rule is well settled by authority."

Whitehouse v. Drisler, 37 App. Div., 525, 56 N. Y. Supp. 95, is also in point. There an action was brought upon a contract under seal to recover commissions alleged to have been earned by the plaintiffs, as brokers, in selling certain real estate. At the trial plaintiffs were permitted to prove, against defendant's objection, that when Whitehouse signed the contract he did so for a Mrs. Rae. On appeal this was held error, and the judgment reversed; the court saying:

"The contract was under seal. The name of Mrs. Rae did not appear in it. There was nothing upon its face to show that she was in any way connected with it, or interested in the subject-matter of it. It could not have been enforced against her by the defendants. The covenant to buy was the personal covenant of Whitehouse, and it could only have been enforced against him. The rule is too well settled to require the citation of authorities that a person is not obligated to perform covenants in a written instrument under seal unless he be a party to it. It is equally as well settled that parol proof cannot be received for the purpose of showing that a contract under seal was really made for the benefit of or on behalf of some person not in any way appearing upon the face of, or mentioned in, the instrument."

To the same effect is Williams v. Magee, 76 App. Div. 512, 78 N. Y. Supp. 550. There an action was brought upon a contract under seal, to which the plaintiff was not a party; he alleging that one of the parties to the contract acted as the agent of a partnership of which the plaintiff was the sole survivor. Defendant's demurrer to the complaint was sustained, and, in affirming the action of the court below, this court said:

"The right of plaintiff to maintain his cause of action as surviving partner is consequently founded upon the assumption that he can show by extrinsic proof that Case was the agent of the copartnership. The law is apparently well settled in this state that only parties named in and who executed an instrument under seal can enforce its covenants. * * * The solemnity which for centuries has been attached to instruments under seal still remains anchored as something tangible and of substance, although in this practical age we are apt to think it rests upon a fiction."

It is not true, as contended by the appellant, that this rule does not apply to contracts under seal, where a seal is not essential to the validity. This fact was considered in some of the authorities cited, and especially in the Briggs Case, where Judge Andrews, referring to it, said:

"A seal has lost most of its former significance, but the distinction between specialties and simple contracts is not obliterated. A seal is still evidence, though not conclusive, of a consideration. The rule of limitation in respect to the two classes of obligations is not the same."

Nor is it true, as also contended by the appellant, that this rule has been modified by the authorities cited by him. We have carefully examined them, and it is sufficient to say that each is clearly distinguishable, and inapplicable to the principle here involved. It would not be practicable, nor would it serve a useful purpose, to here indicate wherein each authority has no application, and it is sufficient to refer to two cases perhaps the nearest in point—Blewitt v. Boorum et al., 142 N. Y. 357, 39 N. E. 119, 40 Am. St. Rep. 600, and Bridger v. Goldsmith,

143 N. Y. 424, 38 N. E. 458. In the Blewitt Case, all the court held
was that it was competent for the defendants to prove, when action was
brought upon a contract under seal (but not required to be so), that
there was a parol agreement to the effect that the contract was not to
take effect until the performance by plaintiff of a prescribed act, while
in the Bridger Case what the court held was that a party who had been
defrauded by another was not precluded from maintaining an action to
recover damages for the fraud simply because the contract, in the
making of which the fraud was perpetrated, was under seal, when a
seal was not required to make it valid. It is not contended that any
fraud was practiced upon McNulta in the execution of the contract
itself. He first objected to having Pardee execute it in his individual
capacity, but, after negotiations with Crocker and Huntington, finally
consented to it. This, it would also seem, precluded him from there-
after asserting that it was not Pardee's contract, under the well-
recognized rule that all negotiations had at or prior to the execution
of a contract are merged in it, and proof cannot be given thereof for
the purpose of modifying or changing its terms.

It follows, therefore, that the appeal, in so far as the same is taken
from the orders, should be dismissed, and the judgment affirmed, with
costs.

VAN BRUNT, P. J., and INGRAHAM, J., concur. PATTER-
SON, J., concurs in result.

LAUGHLIN, J. I concur in the result, upon the opinion of the
referee