ployés to move one of such beams or timbers by hand, and without the use of a crane, provided a sufficient number of employés are furnished for the work, and they are given a safe and suitable place in which to work; and if, under such circumstances, one lets go, and thereby places a greater weight upon the others than they can sustain, and injury results to one or all, the master is not liable.

We conclude in this case that the evidence wholly fails to establish actionable negligence on the part of the defendant, even when interpreted most favorably to the plaintiff, and when he is given the benefit of all the inferences which may be legitimately drawn therefrom. Having reached such conclusion upon the main issue in this case, it is unnecessary to consider the other questions presented by this appeal.

It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event. All concur, except SPRING and KRUSE, JJ., who dissent in a memorandum by KRUSE, J.

KRUSE, J. (dissenting). There was a nonsuit upon the first trial, which was set aside by the trial judge, and we affirmed. The case went back for a new trial, and a verdict was rendered for the plaintiff. The defendant's motion for a new trial was denied, and the case is here again on appeal.

The evidence is no more favorable to the defendant than it was when the case was here before. It is now proposed to reverse the judgment, and send it back for another trial, upon the ground that the evidence fails to establish actionable negligence against the defendant. I think the order setting aside the nonsuit was not a discretionary order. The effect of our affirmance was to hold, not merely that it was discretionary with the trial judge to submit the case to the jury, but that the evidence was such as to require that to be done. Of course, the question is still in the case whether the verdict is against the weight of the evidence; but it does not seem to me that the judgment should be disturbed upon that ground. So far as there is any conflict in the evidence, the jury was well warranted in finding with the plaintiff.

I am not convinced that our former decision is wrong. I think the judgment should be affirmed.

---

(134 App. Div. 422.)

## ROGINSKY v. FREUDENTHAL et al.

(Supreme Court, Appellate Division, First Department. November 12, 1909.)

1. PLEADING (§ 248*)—AMENDMENTS—CHANGE OF CAUSE OF ACTION.

Where, in an action by the assignee of a mortgagor against the executor of a second mortgagee for the surplus received by the mortgagee on a sale of the premises after payment of the incumbrances, the complaint stated a cause of action on the theory that the mortgagor conveyed the premises to a third person to secure the mortgage indebtedness, and that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the conveyance was made on the express agreement that the third person should collect the rents for the mortgagee, who was to receive the same and defray arrears of taxes and other disbursements until a sale could be effected, when he should account to the mortgagor for the surplus above the incumbrances, etc., an amended complaint, to conform to the proof, relying on the agreement of the mortgagee to repay the surplus realized on a sale after paying incumbrances, did not materially change the complaint.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 687; Dec. Dig. § 248.*]

2. EVIDENCE (§ 443*)—PAROL EVIDENCE—ADMISSIBILITY.

Where a mortgagee, to induce the mortgagor to convey the premises to a third person, orally agreed to account to the mortgagor for the surplus on a subsequent sale of the premises after paying the incumbrances thereon, and the mortgagor conveyed the premises to the third person, and he and the third person executed a contract under seal, which did not show that the conveyance was made to the third person for the mortgagee, or that the third person, in executing the contract, acted as attorney in fact for the mortgagee, evidence of the oral agreement was admissible in an action by the assignee of the mortgagor against the executors of the mortgagee for the surplus received by the mortgagee on a sale of the premises, as such evidence was not merged in the agreement between the mortgagor and the third person, and it was not inadmissible because of the agreement between the mortgagor and the third person, since that did not recite any agreement between the mortgagor and mortgagee.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2048–2051; Dec. Dig. § 443.*]

3. CONTRACTS (§§ 186, 188*)—PARTIES LIABLE.

Where a mortgagor conveyed the premises to a third person, and contemporaneously with the conveyance the mortgagor and the third person entered into an agreement under seal, which did not show that the conveyance was made to the third person for the mortgagee, or that the third person, in executing the contract, was acting as attorney in fact for the mortgagee, the mortgagor could not sue the mortgagee on the agreement, nor could the mortgagee sue the mortgagor thereon.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 790, 791, 808; Dec. Dig. §§ 186, 188.*]

4. MORTGAGES (§ 376*)—CONVEYANCES—EVIDENCE—SUFFICIENCY.

In an action by the assignee of a mortgagor against the executors of a deceased mortgagee for the surplus received by the mortgagee on a sale of the premises after paying the incumbrances thereon, evidence *held* to show that the mortgagor relinquished all interest in the property by the conveyance thereof without reserving any claim against the mortgagee, defeating a recovery.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1131; Dec. Dig. § 376.*]

Scott and Ingraham, JJ., dissenting in part.

Appeal from Trial Term, New York County.

Action by Abraham J. Roginsky against Hugo Freudenthal and another, executors of Henry Meyer, deceased. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed, and new trial granted.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Jacob Manheim (Harry A. Gordon, on the brief), for appellants.
John B. Stanchfield, for respondent.

LAUGHLIN, J. This is an action against the executors of Henry Meyer, deceased, on a claim against the decedent which has been assigned to the plaintiff, to recover the surplus of moneys received by the decedent on a sale and conveyance of premises Nos. 62 and 64 Forsyth street, borough of Manhattan, New York, over and above the amount of certain incumbrances thereon and disbursements made on account thereof. The plaintiff's assignor was his father, Pincus Roginsky, who on the 1st day of June, 1905, was indebted to the decedent in the sum of $43,000 on his bond, secured by a mortgage on said premises. The bond and mortgage had been given on the 3d day of June, 1904, to secure the payment of moneys loaned, and the indebtedness, by the terms thereof, was payable on demand, and bore interest at the rate of 6 per cent. per annum. We do not deem it necessary to consider how the indebtedness arose. The plaintiff's assignor failed to apply the rents received from the premises to the payment of current charges to an extent sufficient to pay them all, and at the end of May, 1905, the taxes for 1904 and water rates for 1905, which had become a lien and aggregated nearly $1,500, remained unpaid, and there was to fall due on the 1st day of June, 1905, $2,000 for interest on the first mortgage on the premises. The plaintiff's assignor, realizing that he would be unable to pay the interest on the mortgages, and that either or both of them might be foreclosed, applied to decedent about this time for a further loan of $2,000 with which to pay the interest on the first mortgage. The decedent, who was then in ill health and had become totally blind as the result of an operation in June, 1904, and had given to one Michael, his son-in-law, who had married his only child, a general power of attorney to transact his business, including power to convey real property, to execute assignments of and to satisfy mortgages, to contract for the purchase and sale of real estate and rent and manage real estate, and to make promissory notes and other negotiable instruments and draw checks, "and to take full charge of and manage" his "affairs of every kind and nature whatsoever," was unwilling to make the loan, and complained on account of the failure of the mortgagor to apply the rents to the payment of the current charges, and insisted that he must be protected.

Further negotiations between the parties resulted in the execution and delivery by the mortgagor of a warranty deed of the premises to Michael on the 31st day of May, 1905, subject to the two mortgages and accrued interest thereon, and to the taxes for the year 1904 and water rates for the year 1905, all of which the grantee assumed and agreed to pay, and subject, also, to existing leases and tenancies. The consideration recited in the deed is $100 "and other valuable considerations." It does not expressly appear that the consideration recited was not paid; but it is to be fairly inferred from the evidence that it was not. Simultaneously with the execution of the conveyance of the premises, the grantor and grantee executed a contract in writing under seal, bearing date the 29th day of May, 1905, reciting, among other things, the mortgages on the premises, and the taxes and water

rates which were unpaid; that the grantor had received from tenants of the premises various sums of money as security for their leases, aggregating the sum of $900, and was desirous of selling and conveying the premises to Michael, subject to the mortgages, the grantee to assume the same and indemnify him against any and all liability under and by virtue of the bonds executed by him accompanying the mortgages, and to agree to repay to the tenants the amount so advanced by them when they should become entitled thereto; that the grantor agreed to sell and convey the premises subject to the mortgages, taxes, water rates, and leases, and to execute and deliver a deed thereof to Michael upon the execution of the agreement; and following these recitals the agreement contained mutual covenants of the parties to the effect as recited, and plaintiff's assignor therein agreed to pay the bills for repairs, gas, and coal to the date of the agreement. Michael at no time asserted any individual right by virtue of the conveyance to him, other than as hereinafter stated, but assumed to manage the property under his power of attorney from Meyer, and collected the rents and deposited the same to Meyer's credit in the German Exchange Bank, and from time to time drew checks thereon as Meyer's attorney in fact; but neither the deed nor the agreement in writing to which reference has been made, either in any recital or provision or in the form of execution, showed that Michael was acting otherwise than for himself.

On the 8th day of June, 1906, Michael entered into a contract for a sale of the premises with one Goldfein, for the consideration of $137,000, payable $80,000 by taking the premises subject to and assuming the first mortgage thereon for that amount, $37,000 by taking the premises subject to the second mortgage of $43,000, which by agreement between Michael as owner and Meyer as mortgagee was to be reduced to $37,000, and $2,000 on the execution of the contract, and $18,000 on the closing of the title. The second mortgage, thus reduced to $37,000, was also modified by the same agreement from being payable on demand to being payable in installments of $15,000 every six months, and the final payment at the end of five years. Meyer had been living with Michael down to this time, but between the date of the contract and the time for closing it they became estranged, and the power of attorney was revoked June 12, 1906. At Meyer's request, Michael conveyed the premises to him on the 13th day of June, 1906. At the same time Meyer executed an agreement in writing to Michael, by which he undertook to carry out the contract for the sale of the premises to Goldfein, and it is recited therein that Michael held the premises for Meyer and had no personal interest therein. This was delivered and accepted by Michael, who received one-half of the brokerage commissions on a sale of the premises to Goldfein. Testimony was given tending to show that Michael at first refused to convey the premises to Meyer without a division of profits; but this is denied. On the 1st day of August thereafter, Meyer performed the contract and received in cash, on account of the cash payment then due, the sum of $16,769.41. On the 13th day of April, 1906, plaintiff's assignor signed and delivered to him a memorandum, in the handwriting of the

former, reciting that in consideration of moneys loaned he assigned to the plaintiff—

"all the profits I may have in the house situated on the northeast corner of Hester and Forsyth streets, which is now held in trust by Mr. Charles Michael for Mr. Henry Meyer and myself."

In January thereafter plaintiff's assignor, according to his own testimony, "went into bankruptcy." The plaintiff and his assignor were examined concerning this claim on the proceedings in bankruptcy; but no right thereto appears to have been asserted by the trustee. Meyer died on March 4, 1907. The plaintiff filed his claim with the executors on the 8th day of April, 1908.

The plaintiff's theory of his action, according to the allegations of his complaint and according to the brief of his counsel on the appeal, is that the conveyance by the mortgagor to the son-in-law of the mortgagee was for the purpose of further securing the indebtedness represented by the bond and mortgage, and that it was made on the express agreement that Michael was to collect the rents for Meyer, who was to receive the same, and to meet and defray all arrears of taxes and water rates and all other disbursements and expenditures incident to conveying and managing the property until an advantageous sale could be effected, at which time he was to account to the plaintiff's assignor for any surplus remaining, after reimbursing himself and deducting the remaining indebtedness secured by the bond and mortgage. At the close of the evidence certain proceedings were had upon the trial, which counsel for appellant contends changed this theory of plaintiff's case. They arose on a motion made by counsel for defendants as follows:

"I have a preliminary motion, and that is that the plaintiff be compelled to elect whether he desires to proceed upon the theory that the transfer of this property by Roginsky to Michael on May 31, 1905, was in trust, or, as security, or by way of security, or by way of sale."

Thereupon counsel for plaintiff said:

"I do now elect pursuant to their motion, and I move, therefore, to conform the pleadings to the proof. In pursuance of their request, we now elect and rely solely and absolutely upon the sale and upon the agreement to repay us the surplus, whatever was realized over what was paid to Meyer."

Counsel for defendants then said:

"I object to any conforming of the pleadings to the proof, and the Court of Appeals and the Appellate Division has lately decided that there can be no such thing as conforming pleadings to proof, when proof was admitted under objection."

Whereupon the court said:

"I do not think this proof was admitted under objection. I will grant the motion, and you may take an exception."

I am of opinion that this did not materially change the complaint. Upon the trial, parol evidence was offered tending to support the plaintiff's claim, which under the original complaint, and under it as amended, was on an agreement to account for the surplus on a sale

of the premises, and when it thereafter appeared that the contract in writing, to which reference has been made, was executed by and between the plaintiff's assignor and Michael at the time of the execution of the deed, counsel for defendant moved to strike out the evidence resting in parol, on the ground that all negotiations were merged in the contract. The court denied the motion, and an exception was duly taken.

It is contended by counsel for the appellants that this was error. He presents two theories in support of this contention. His first claim is that the undisputed evidence shows that Michael was acting for Meyer, that Meyer was his alter ego, that the deed was in effect a deed to Meyer, and that the agreement was in effect an agreement on the part of Meyer, executed by Michael under the power of attorney; and his other claim is that, according to the parol evidence upon which the plaintiff relies, this is what the parties intended, and that if, instead of deeding the premises to Michael for Meyer, plaintiff's assignor contracted with Meyer personally, then, even though it was understood that Meyer would account to plaintiff's assignor for the surplus arising on a sale of the premises, that agreement on his part would not be binding on him or against his estate, if the condition upon which it was made was not complied with, namely, that the premises be conveyed to Michael for him.

The question of law presented by the exception to the refusal of the court to strike out this evidence presents difficulties. The objection was timely taken (Mahaney v. Carr, 175 N. Y. 454, 67 N. E. 903); but I think it was not good. It is very clear that the action could not be maintained against Michael. If it were brought against him, the parol agreement in question would not only be deemed to have been merged in the writing; but the evidence to establish it would tend to contradict and be inconsistent with the agreement containing mutual covenants, executed by him and his grantor at the time of the execution of the deed, and would therefore be clearly inadmissible. Sturmdorf v. Saunders, 117 App. Div. 762, 102 N. Y. Supp. 1042; Middleworth v. Ordway, 191 N. Y. 415, 84 N. E. 291; Case v. P. B. Co., 134 N. Y. 78–81, 31 N. E. 254; Thomas v. Scott, 127 N. Y. 133, 27 N. E. 961; Marsh v. McNair, 99 N. Y. 174, 1 N. E. 660; Lossing v. Cushman, 195 N. Y. 386, 88 N. E. 649; Lese v. Lamprecht, 196 N. Y. 32, 89 N. E. 365.

I am of opinion that the second claim of counsel for the plaintiff with respect to the inadmissibility of the evidence is not tenable. The conveyance was made in accordance with Meyer's direction, and whether or not, as matter of law, it became a conveyance to Michael individually, or to him as trustee or attorney in fact for Meyer, would not affect Meyer's liability on the point now under consideration, namely, that the conveyance was not made to Michael for Meyer. The attorneys who drew the papers represented all of the parties, and it is uncontroverted that the papers were drafted according to their directions. Therefore neither Meyer nor his estate could escape liability on that theory alone. I am of opinion that it was competent for Meyer, as mortgagee, to make a valid parol agreement with his mort-

gagor to induce the latter to execute a conveyance of the premises to the effect as claimed from the parol evidence. It is perfectly clear that if the conveyance had been made to himself, and he and the mortgagor had executed the agreement that was executed by his son-in-law to the mortgagor, parol evidence would not be admissible to show an agreement on his part to account for any surplus on a sale of the premises; but that is not the case as presented by this parol evidence.

The evidence, if credible, is to the effect that the mortgagee, for the purpose of inducing the mortgagor to convey the premises to his son-in-law, in whom he had trust and confidence, and on whom he apparently relied, without taking any writing to show that the title was to be held for him, made an agreement resting in parol to account to the mortgagor for the surplus on a subsequent sale of the premises. That evidence, I think, was not rendered inadmissible by the agreement between the mortgagor and the grantee. That agreement does not purport to recite, in whole or in part, any agreement between the mortgagor and the mortgagee, and I think it cannot be successfully contended that every agreement resting in parol between the mortgagor and the mortgagee must be deemed, as matter of law, to be merged in the agreement executed between the mortgagor and the grantee. I concede that if the deed and contract showed that the conveyance was made to Michael for Meyer, and that Michael, in executing the contract, was acting as attorney in fact for Meyer, then all parol negotiations on the subject between the mortgagor and the mortgagee would be deemed merged therein; but that is not this case. The agreement being under seal, the law is perfectly well settled that the mortgagor could not sue Meyer on the covenants and agreements made by his son-in-law therein. On the other hand, could Meyer sue the mortgagor on any covenants he made therein? Spencer v. Huntington, 100 App. Div. 463, 91 N. Y. Supp. 561, affirmed 183 N. Y. 506, 76 N. E. 1109; Schaefer v. Henkel, 75 N. Y. 378; Henricus v. Englert, 137 N. Y. 488, 33 N. E. 550; Briggs v. Partridge, 64 N. Y. 357, 21 Am. Rep. 617; Farrar v. Lee, 10 App. Div. 130, 41 N. Y. Supp. 672; Whitehouse v. Drisler, 37 App. Div. 525, 56 N. Y. Supp. 95; Williams v. Magee, 76 App. Div. 512, 78 N. Y. Supp. 550, affirmed 177 N. Y. 537, 69 N. E. 1133; Stanton v. Granger, 125 App. Div. 177, 109 N. Y. Supp. 134; Van Allen v. Peabody, 112 App. Div. 57, 97 N. Y. Supp. 1119.

Since, as has been seen, Meyer could not have sued on the agreement, I am of opinion that neither he nor his executors can interpose it as an objection to the admissibility of parol evidence to show a separate and independent agreement on his part. We are not now concerned with the question as to whether or not Meyer or his estate would be liable if neither he nor his executors received the surplus on the sale of the premises, and we express no opinion thereon; for here, whether the transaction be regarded as a conveyance of the property in trust, the agreement resting in parol, or on the contract by which the mortgagor was induced to convey the property, the conditions upon which the plaintiff's assignor was to become entitled to the surplus have transpired. See Bork v. Martin, 132 N. Y. 280, 30 N. E. 584, 28 Am. St. Rep. 570.

I am of opinion, however, that the verdict should be set aside as against the weight of the evidence. Notwithstanding the fact that the agreement in writing was not in law the agreement of Meyer, it was executed pursuant to the negotiations between all of the parties, and was drawn and signed by their attorneys with full knowledge thereof on the part of Meyer, as well as the parties who executed it. If, as indicated by some of the testimony, the mortgagee was desirous of continuing the mortgage on the premises and of not having it merge in the conveyance, it would be natural to expect that, even though the plaintiff's assignor was to receive any surplus on a sale of the premises, he would desire to be relieved from liability on his bond accompanying the second mortgage, and perhaps from liability to repay the moneys held as security for the leases, since he was financially embarrassed at the time; but it is not probable that he would have exacted as a condition that he be indemnified also against liability on the bond accompanying the first mortgage, nor is it likely that Michael, who was considered responsible, would have so obligated himself if his grantor was not parting with all interest, and it is highly probable that the agreement by which he was to receive the surplus would have been incorporated in the formal contract, for it was not intended that it should be recorded, and in fact it was not so executed as to entitle it to be recorded, and it was merely intended as a private agreement between the parties.

We have not overlooked the testimony tending to show that Meyer was requested by the mortgagor to execute an agreement, and that he insisted that the parties had had a similar transaction before without an agreement in writing. It is possible to account for the omission of any recital from the agreement between grantor and grantee on that ground; but we do not regard it as a satisfactory explanation for such omission. The attorney who drew the papers and supervised their execution testified, in substance, that when the parties came to him the mortgagor stated that he desired to turn over the property to Meyer, but that he wanted an agreement to protect him against liability on the bonds, and on account of the moneys advanced by tenants as security for the rents, and that the agreement to which reference has been made was drafted for that purpose. The evidence tends to show that Michael is not friendly to the estate of his deceased father-in-law, and has an action pending against the executors for a very large amount of money. His testimony tends to sustain the claim of the plaintiff; but he repeatedly denied that any agreement from him was requested by the mortgagor, or that he executed any agreement to or with the mortgagor, and when the agreement was produced, and proved by the attorney, he was not called to the stand to attempt any explanation of this testimony, or to contradict the testimony of the attorney with respect to what occurred at the time the papers were drafted and executed.

Other testimony in support of the plaintiff's claim was given by one Harris, who was his son-in-law. Harris testified to an interview between the plaintiff's assignor, Michael, and Meyer, the night before the parties went to the attorneys to have the deed and contract pre-

pared. His testimony tends to support the plaintiff's claim that there was an understanding to the effect that on a sale of the premises Meyer was to give the surplus to plaintiff's assignor. Plaintiff's assignor, being disqualified from testifying by virtue of the provisions of section 829 of the Code of Civil Procedure, only testified in contradiction of part of the testimony of the attorney who drew the papers. Other testimony was given by Goldfein, his son, and the janitor of the premises in question, who shared in the commissions on the sale, with respect to interviews between them and Michael, tending to show that Michael reported conversations between him and Meyer to them, indicating that Meyer claimed, after the execution of the deed and agreement, that on a sale of the premises to Goldfein he would be obliged to account to plaintiff's assignor for any surplus left after reimbursing himself and deducting the amount of his claim. It also appears, by the testimony of the attorney who represented the parties, that the second mortgage at this time was not worth more than 80 per cent. of its face value, and his testimony in this regard is not controverted.

The attorneys who represented the parties had been the attorneys for both Meyer and plaintiff's assignor for many years, and there is nothing to indicate that the members of the firm who consulted with the parties and drafted the papers, had any object other than to draft the papers according to the parol agreement of the parties, communicated to him in the presence of all of them. We therefore regard the formal agreement, signed and executed by the mortgagor and Michael, as convincing evidence that plaintiff's assignor intended to relinquish all interest in the property and that he reserved no claim against the mortgagee. We are of opinion, therefore, that the verdict is against the weight of the evidence.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

CLARKE and HOUGHTON, JJ., concur. SCOTT, J., concurs in result.

INGRAHAM, J. I concur with Mr. Justice LAUGHLIN that the verdict was against the evidence; but I am also of the opinion that the evidence of the oral agreement was incompetent, as it was merged in the written agreements under which the property was conveyed.