FAIRCHILD v. SCARSDALE ESTATES et al.

WHITE PLAINS DEVELOPMENT CO. v. REED et al.

(Nos. 66 E, 67 E.)

(Supreme Court, Appellate Division, Second Department. February 19, 1915.)

1. VENDOR AND PURCHASER (§ 327*)—PURCHASER UNDER SPECIALTY—AGENCY.
    A purchaser of land under a contract under seal could enforce a claim
    for shortage in the amount conveyed, although she took title for another.
        [Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. §
    327.*]

2. ACTION (§ 65*)—RIGHTS ACQUIRED PENDING ACTION—CLAIM TO SUE FOR
    SHORTAGE OF LAND CONVEYED—RIGHT TO MAINTAIN ACTION.
        Where suit was brought on a claim for an alleged shortage in the
    amount of land conveyed to another, a subsequent assignment of the claim
    to plaintiff gave no authority to maintain the suit previously brought, or
    to intervene by counterclaim in a suit in equity concerning the land, also
    begun before the assignment.
        [Ed. Note.—For other cases, see Action, Cent. Dig. §§ 735, 736; Dec.
    Dig. § 65.*]

3. DEEDS (§ 158*)—CONDITIONS THAT RUN WITH THE LAND—STIPULATION AS
    TO SHORTAGE IN AMOUNT CONVEYED.
        A stipulation in a deed as to a shortage in the amount conveyed does
    not run with the land.
        [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 502–504; Dec. Dig.
    § 158.*]

Appeals from Special Term, Westchester County.

Action to foreclose a mortgage by Josephine M. Fairchild against the
Scarsdale Estates, the White Plains Development Company, the
Guardian Trust Company, as trustee, and others, and action at law by
White Plains Development Company against Emma E. Reed and an-
other and the Scarsdale Estates. In the foreclosure action, both plain-
tiff and the defendants White Plains Development Company and
Guardian Trust Company appeal from parts of a judgment for plain-
tiff Fairchild; and in the action at law, the White Plains Development
Company appeals. Judgment in the equity action affirmed in part and
reversed in part, and judgment in the action at law affirmed.

See, also, 151 N. Y. Supp. 1114.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and
PUTNAM, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

Elmer E. Cooley, of New York City, for appellant Fairchild.

William S. Bennet, of New York City, for appellants White Plains Development Co. and Guardian Trust Co.

William L. Rumsey, of New York City, for respondent.

THOMAS, J. The trial court decided correctly that the plaintiff purchased an interest in the mortgage limited to the principal sum of $150,000. Payment therefor, with interest, and no more, is sought in the complaint; proof of such an interest, and no greater, was shown; judgment for such amount was moved; the formal assignment of that interest, and no more, was made. It does not concern the plaintiff who owns the remaining interest. The Scarsdale Estates, in its resolution authorizing the sale of the land, contemplated a shortage of acreage, which the map long in its possession showed to exist, and for which there was a provision in the resolution authorizing the contract, while the contract itself provided that if, upon survey, a shortage of acreage should appear, there should be a deduction from the purchase price at the rate of a given price per acre, "such amount to be deducted from the sum to be secured by the second mortgage." The contract was made June 8, 1906, and the closing, set for August 2d, was adjourned to August 10th, and then had at a law office in the city of New York. Of the principal representatives of the parties, Hitchcock was dead and the other in prison, but several persons, including the lawyer for the Scarsdale Estates, were witnesses; but none of them had any recollection that the question of shortage was involved in the adjustment, although 10 acres of land that the vendor was privileged to reserve were made a part of the sale at a price which a witness said was fixed at $20,000. But the purchase price was advanced only by $8,700, which was quite inadequate to meet the value of the 10 acres. How the balance of the $20,000 was paid is not known, and it is the merest conjecture that the shortage was used to make up the deficiency. There was a map, made in 1897, produced by the vendor at the closing and used therefor, which showed the shortage. Nevertheless, the deed and mortgages which had been earlier drafted were redrafted, and yet the original full acreage was stated in them as if no treatment of the acreage had been had.

It is clear enough that the vendee's agent in charge had, before August 22, 1906, full opportunity to see a map made by its engineer which showed the true acreage, and the inference is justified that he did see it, as the engineer carried it when he went on the land with either Hitchcock or Jennings It is a fair inference that at the closing the acreage was known. For several years the interest was paid on the mortgage, and finally, after financial embarrassments, Jennings and the vendor recast the arrangement for payments, and Jennings paid a large sum pursuant thereto. If a claim for shortage existed, it would have been too helpful to be disregarded by Jennings. The contract evidently intended that a new survey should be made and the shortage discovered thereby deducted from the sum "to be secured by the second mortgage." That shows intention that the deduction should be made before the mortgage was given. One fact is

quite clear, and that is that whatever agreement was made at the closing was discussed between Jennings and Hitchcock, and that the lawyer drawing the papers took whatever they told him for that purpose. It is an allowable inference that the shortage was arranged, although knowledge of the basis of it did not extend beyond Jennings and Hitchcock, although such conclusion is quite inconsistent with the continuance of an incorrect recital of the acreage in the deed and mortgages. It is inferable that the parties did at the closing what the contract intended should be done at that time, in the absence of evidence of change in the contract in that regard.

[1-3] Reed was the vendee under a contract under seal, and, although she took for the Anderson Realty Company, she alone, without assignment, could enforce the claim for the shortage. Henricus v. Englert, 137 N. Y. 488, 33 N. E. 550; Spencer v. Huntington, 100 App. Div. 463, 91 N. Y. Supp. 561, affirmed 183 N. Y. 506, 76 N. E. 1109; Klein v. Mechanics' & Traders' Bank, 145 App. Div. 615, 130 N. Y. Supp. 436; Durnherr v. Rau, 135 N. Y. 219, 32 N. E. 49; Case v. Case, 203 N. Y. 263, 96 N. E. 440, Ann. Cas. 1913B, 311. She made no assignment of her cause of action until both of the present suits were brought, and then to the White Plains Realty Company, which gave it no authority to maintain the suit earlier brought by it, or to interpose a counterclaim in the equity suit also earlier begun. Reed made no assignment to the Anderson Company, and it had nothing to assign to the White Plains Company. Reed's deed and the subsequent deed merely conveyed land with the usual warranties. The stipulation as to shortage did not run with the land. 2 Devlin on Deeds, § 942. The authority cited for this is Salmon v. Vallejo, 41· Cal. 481, where it is so decided. There was similar decision in Pigeon River Lumber & Iron Co. v. Mims (Tenn. Ch. App.) 48 S. W. 385.

The judgment in White Plains Development Company v. Scarsdale Estates should be affirmed, with costs. It is said that the Scarsdale Estates has not answered in the equity suit; but it did in the other action, and the cases were tried and argued together. In the action at law the judgment properly goes against the plaintiff. In the foreclosure action the Scarsdale Estates, without any pleading, has tried the case as if it had pleaded, and has been permitted to do so. The court has found that it owns the $25,000 interest, that the White Plains Company has no claim for shortage, and that nothing should be deducted from the mortgage. It is impossible to understand how the Scarsdale Estates can defeat. those issues without pleading. All contesting parties are at fault for this condition of the record.

The judgment, so far as it provides for a foreclosure of the mortgage, should be affirmed, without costs, but, so far as it decides the issues proffered by the White Plains Company, it should be reversed, and a new trial granted, without costs. This will enable the Scarsdale Estates to apply for leave to plead as against the White Plains Company. All concur.