PAUL PODZUWEIT, Doing Business as PAUL F. PODZUWEIT & Co., et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 28417.)

Court of Claims, April 5, 1948.

*Edwin J. Culligan* and *Stanley H. Montfort* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Donald C. Glenn* of counsel), for defendant.

RYAN, J. On July 6, 1944, the above-named plaintiffs jointly entered into a contract with the State of New York for completing the painting of the North Grand Island Bridge and the South Grand Island Bridge in the counties of Erie and Niagara. On November 14, 1945, plaintiffs filed with the clerk of the Court of Claims and served on the Attorney-General a notice of intention to file a claim which contained statements amounting to allegations of breach of contract and which asserted that the amount of the claim could not be determined at that time. By a supplemental agreement, dated June 3, 1946, and approved July 9, 1946, the contract was modified by a net increase in quantities to be supplied and the amount to be paid, and the time for completion was extended to October 3, 1946, without charge for engineering or inspection expenses. By a further supplemental agreement, dated October 7, 1946, and approved November 15, 1946, the contract was further modified by a net decrease in quantities and amount. The last mentioned document is referred to as the final agreement. Both supplemental agreements included and continued the provisions of the original contract. The contract work was completed September 6, 1946.

Six copies of the aforesaid final agreement were forwarded to the plaintiffs for signature by Charles R. Waters, District Engineer, Department of Public Works, under date of October 8, 1946. Before executing the said agreement, plaintiffs forwarded to the said district engineer a letter in words as follows: ''We have your letter of October 8, 1946 enclosing for our signatures six copies of what you term the final agreement for our Grand Island Bridge Painting Contract, R.C. 41-24.

'' We merely want to have it clearly understood that while we agree with you as to the correctness of the items set forth in the proposed agreement, that the signing of same by us shall not, in any manner, affect the rights of either the State of New York, or the undersigned, arising out of our notice of intention to file any claims that we may subsequently file pursuant to such notice.

'' We do not think that it was your intention that the signing of this agreement on our part should so operate but as a precautionary measure, we trust that you will acknowledge receipt of this letter and advise us that such signing shall not, in any manner, be an estoppel to any rights that we may have as hereinbefore set forth.''

The letter was received but neither Mr. Waters nor any other officer of the State of New York acknowledged its receipt or

replied to it. Under date of December 5, 1946, Henry A. Cohen, Director, Bureau of Contracts and Accounts of the Department of Public Works, forwarded to plaintiffs duplicate receipts for final payment in the amount of $1,048.84 in connection with their contract. On December 16, 1946, plaintiffs signed the said receipts and returned them to the State of New York, after first striking from the printed form of the receipt the words '' and also for all extra work performed and material furnished by us on and for said highway and not included in said contract.''

With the foregoing words stricken out, the document acknowledged receipt of the sum aforesaid in full payment of final estimate dated the 6th day of September, 1946, which I find, after personal investigation is a final and correct account of all work done and material furnished under our contract dated the 6th day of July, 1944. Under date of January 8, 1947, the State of New York issued a check in the amount of $1,048.84 and plaintiffs availed themselves of the proceeds thereof on or about January 15, 1947.

On April 9, 1947, plaintiffs filed their claim in the Court of Claims. The Attorney-General has proceeded by affidavit and notice of motion to dismiss this claim on the ground that it has been released. The dates and incidents hereinabove recited appear in the motion papers and the exhibits thereto attached or are conceded on the argument. For the purposes of this motion such statements are accepted as correct. Ordinarily release of a cause of action is a defense to be pleaded. (Civ. Prac. Act, § 242.) According to Court of Claims rules of practice when suit is brought against the State, it is not required to plead unless it interposes a counterclaim. (Rules of Court of Claims, §§ 13, 14.) Whether or not rule 13 absolves the Attorney-General from pleading an affirmative defense has been questioned heretofore on two reported occasions. In neither instance was a definite answer essential to the decision of the issues under consideration. Thus none has been given by an appellate court. (*Rafferty* v. *State of New York,* 172 Misc. 870 [1939], affd. 261 App. Div. 80; *Dulinak* v. *State of New York,* 177 Misc. 372, affd. 262 App. Div. 1064 [1941].) However, this motion is not one for summary judgment under rule 113 of the Rules of Civil Practice, which rule contains the preamble: '' When an answer is served in an action.'' It is, instead, a motion for judgment on the complaint and affidavit and is available to a defendant after the service of a complaint and before the service of an answer. It is a remedy available to the State of

New York. (Civ. Prac. Act, § 62; Judiciary Law, § 2; Court of Claims Act, § 9, subd. 9.) Authority for the motion is found in subdivision 7 of rule 107 of the Rules of Civil Practice and it will be considered and determined accordingly.

Plaintiffs' contract with the State of New York contained the following clause: 24A. " The acceptance by the contractor of the last payment on this contract as hereinbefore provided, shall be and shall operate as a release to the State of New York and each official, agent, representative and employee thereof, from all claim and liability to the contractor and all sub-contractors for anything done or furnished for or relating to the work, or for any act or omission of the State of New York, its officials, agents, representatives and employees, relating to or affecting the work, except only the claim against the State of New York for the remainder, if any there be, of the amounts kept or retained as provided in this contract."

It is the Attorney-General's position that by accepting the payment of $1,048.84 the quoted clause of the contract became operative; that plaintiffs have released the cause of action sued upon; that the attempted reservation made by plaintiffs, as hereinabove described, was to no effect. In support of his position the Attorney-General calls our attention to several cases wherein, the last payment having been accepted by the contractor, a contract clause in language identical or substantially similar to that hereinabove quoted was held to be a bar to recovery in an action for breach of contract and for extra work and materials. One of the most recent of these is *Nicholas v. City of New York* (267 App. Div. 752, affd. 293 N. Y. 704 [1943]) wherein the defendant served an answer alleging payment and then moved for judgment under rule 113 of the Rules of Civil Practice, which motion was granted and affirmed on appeal. Another is *Oakhill Contracting Co. v. City of New York* (262 App. Div. 530 [1941]) wherein the answer pleaded the contract clause, payment and release, and accord and satisfaction. The court struck out " affirmative replies " which asserted representations by a city employee with respect to the effect of a written release executed by the contractor and the acceptance of payment conditional on reservations in such document. The Attorney-General, in his argument, emphasizes that these cases hold that it is the acceptance of payment which constitutes the release; that the delivery of a formal written document is unnecessary and inconsequential. Indeed it appears that acceptance of payment was the basis for judgment on the pleadings in each of said instances.

However, in *Fredburn Constr. Corp.* v. *City of New York* (280 N. Y. 402) the Court of Appeals reversed both the Appellate Division, First Department (255 App. Div. 764) and the Special Term (166 Misc. 120) which had dismissed a complaint. In a *Per Curiam* opinion, the Court of Appeals said: '' We are of the opinion that upon the motion made by defendant for summary judgment under rule 113 of the Rules of Civil Practice, a substantial question of fact was presented which entitled the plaintiff to a trial of the issue as to whether the so-called last payment voucher was intended and understood to be a last payment voucher and whether plaintiff was barred by accepting the so-called last payment from recovering any further payments from the defendant.''

Likewise in *Cascade Automatic Sprinkler Corporation* v. *State of New York* (147 Misc. 420, affd. 247 App. Div. 226, motion for reargument denied 248 App. Div. 795, mod. 248 App. Div. 922, affd. 277 N. Y. 612) and in *Cauldwell-Wingate Company* v. *City of New York* (269 N. Y. 539 [1935]) both relied upon by the Attorney-General, there were trials of the issues of fact. That there may be situations where the parties did not intend or understand the payments to be final and circumstances where acceptance of payment does not constitute a release or accord and satisfaction is indicated by the decision of the Supreme Court, Appellate Term, First Department, in *Bronx Asphalt Corporation* v. *City of New York* (35 N. Y. S. 2d 7 [1942]) wherein there was a reversal of judgment on the pleadings, granted by the City Court (13 N. Y. S. 2d 197).

Not long ago, in a case where claimant in executing the final agreement reserved its right to go to the Court of Claims and in the final receipt acknowledged payment except certain items not included in the final account, we held that acceptance of payment did not bar recovery. (*Banko, Inc.*, v. *State of New York,* 186 Misc. 491 [1946], certificate of no appeal issued May 22, 1946.)

Here the plaintiffs filed and served their notice of intention on November 14, 1945, eleven months before the district engineer forwarded to them, for signature, the final agreement. When they returned that document they expressly called attention to this notice of intention and stated that they wanted it '' clearly understood '' that their signing the final agreement '' shall not in any manner '' affect their rights under it. Counsel for the defendant takes the position that the State of New York was under no obligation to answer that letter, Perhaps

not, but the failure of its representative to do so may have indicated to the writers of the letter acquiescence in their position that they were reserving their right to make claims under their notice of intention which was then on file with the clerk of this court and with the Attorney-General. Silence and the lapse of nearly two months — October 14 to December 5 — before the final receipt was mailed to them to be signed, may have strengthened their belief. If the formal receipt was unnecessary and of no consequence, why was its use invoked? These incidents and this conduct on the part of the State may spell out a waiver of the contract provision. Such a possibility raises issues of fact. (*Alsens A. P. C. Works* v. *Degnon Contracting Company*, 222 N. Y. 34 [1917]; *Lord Construction Company* v. *Edison Portland Cement Co.*, 234 N. Y. 411 [1923]; *Squier* v. *Houghton*, 131 Misc. 129 [1927], citing *Haviland* v. *Willets*, 141 N. Y. 35 [1894].)

Particularly in this litigation would it be unjust to deny a trial of the issues of fact because the action sounds in fraud. Except, perhaps, for one item, and that the smallest, representing less than 10% of the total amount demanded, the pleading asks for damages which appear to flow from the allegation that " The plans and specifications submitted incorrectly showed the amount of work required and the State of New York fraudulently and wilfully concealed information relative to the work required and the plans were incorrectly prepared."

This allegation distinguishes this action from the *Nicholas, Oakhill, Cascade* and *Cauldwell-Wingate* cases, in each of which damages were sought either for delays and interferences or for extra work performed or for both causes. Here claimants' pleading does not, in direct language, assert that the fraudulent concealment of information and the incorrect plans induced claimants to enter into the contract. But it may be so construed. It appears that claimants have not disaffirmed their contract. They have not sought rescission. Instead they are suing at law for damages arising from the fraud. (*Ettlinger* v. *National Surety Company*, 221 N. Y. 467 [1917]; *Merry Realty Co.* v. *Shamokin Hollis R. E. Co., Inc.*, 230 N. Y. 316 [1921].) If they can prove fraudulent inducement the release clause in the contract may be voidable. Here are questions of fact. (*Goldsmith* v. *National Container Corporation*, 287 N. Y. 438 [1942].) On the record before us at this time the State has benefited at the expense of the claimants. Opportunity should be given for the facts to be heard and the circumstances to be disclosed. We

do not regard *Frehe* v. *Schildwachter* (289 N. Y. 250 [1942])
as holding to the contrary. Even if the Attorney-General's
motion were granted there would be precedent for permitting
the claimants to amend their pleading. (*Rudnick* v. *Rosenberg,*
66 N. Y. S. 2d 720 [1946].)

This motion for judgment having been made pursuant to
rule 107 of the Rules of Civil Practice, its determination is
governed by rule 108 of the Rules of Civil Practice. This rule,
among other things, provides that the court hearing the motion
may direct that the questions of fact "be tried by a jury or
referee, the findings of which shall be reported to the court
for its action." There is no provision for juries in the Court
of Claims practice. There is no way to compensate a referee,
appointed under rule 172 of the Rules of Civil Practice, because
his fees (Civ. Prac. Act, § 1545) usually taxable as costs (Civ.
Prac. Act, § 1518) may not be recovered in the Court of Claims
(Court of Claims Act, § 27). However, an Official Referee of
the Court of Appeals is available to hear and report upon all
actions and special proceedings of a civil nature wherein the
People of the State of New York may be a party or in which
the Attorney-General is authorized by law to appear or which
he is authorized to defend in his official capacity. (Judiciary
Law, §§ 115, 115-a.) This is such an action. But a reference
to the Official Referee is dependent upon the consent of the
parties. (Judiciary Law, § 115.) The consent of the Attorney-
General may be inferred from his action in proceeding under
rule 107 of the Rules of Civil Practice of which rule 108 of the
Rules of Civil Practice is the complement. If claimants' counsel
joins in this consent the court will grant an order of reference
to the Honorable CHARLES B. SEARS, Official Referee of the Court
of Appeals. The order shall "clearly and succinctly" state
the questions of fact to be answered. (*Barker* v. *Conley,* 267
N. Y. 43 [1935].) It shall direct the said referee to report his
findings on such questions to the court for its action. (*Campbell*
v. *Muncie,* 246 App. Div. 633 [1935]; *Gottfried* v. *Gottfried,* 269
App. Div. 413 [1945].)

The parties hereto may file written consent to reference, or
may appear and consent thereto, and settle order framing ques-
tions of fact on notice within ten days. If this procedure is
not adopted the defendant's motion is in all respects denied,
without prejudice to the Attorney-General to assert the release
clause of the contract as a defense upon the trial of the issues
in this court, in regular course.