ISIDOR MICHAEL, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 25419.)

Court of Claims, April 28, 1948.

*George M. Simon* and *Charles B. Sullivan* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Burns F. Barford* and *James G. Austin* of counsel), for defendant.

RYAN, J. ˙Reference is made to our decision reported at 187 Miscellaneous Reports 342 wherein we determined, as a preliminary issue, that this claim accrued October 10, 1938, and having been filed on March 24, 1939, which was within six months after it accrued, the Attorney-General's motion to dismiss it for lack of jurisdiction must be denied. Now, after an extended trial at which there was presented much testimony and many voluminous exhibits and which occupied sixteen days, the issues of fact and of law have been presented to us upon written briefs and requests to find.˙ Insofar as the facts are recited in our previous opinion it will be unnecessary to repeat them here and what follows will be written, and must be read, in the contemplation that certain incidents, dates and figures have already been presented. We shall be as brief as possible in our recital of such additional data as we deem essential to an understanding of the issues presented, the findings that we make and the conclusions we have reached.

This claim must be dismissed. It must be dismissed upon the merits and it must be dismissed because this claimant has no right to recover upon it. We shall first discuss the merits of the controversy and the principles of law which are, in our opinion, applicable thereto. We shall thereafter explain why we have reached the conclusion that, in any event, there can be no award to this claimant.

This action was brought by Miller Brothers Construction Co., Inc., the original contractor, to recover, on *quantum meruit,*

damages for breach of its contract. Although the pleading contains certain allegations about change orders, extra work performed and delays and interferences, these statements are merely explanatory of the contractor's failure to finish its work by December 1, 1935, the original completion date. Actually the contractor asked for and was granted an extension of time to August 1, 1936, and no complaint is made about its terms. (Ex. 60.) Concededly, this is not an action for extra work performed or extra materials furnished.

The basis of the alleged breach is the refusal of the State of New York to give the contractor a supplemental agreement. The burden of establishing that the contractor was entitled to a supplemental agreement is affirmative and rests upon the claimant. The contract called for the construction of 5.63 miles of bituminous macadam highway, running north and south through Keene Valley along or nearby the east branch of the Ausable River and also included the construction of five new bridges. Two of the bridges crossed the east branch of the Ausable and three crossed its tributaries, Beebe Brook, Johns Brook and an unnamed small stream north of Johns Brook. The contract also provided for stone masonry retaining walls and stone fills and for 122,125 cubic yards of unclassified excavation, most of it in designated areas in the river channel. On November 1, 1935, when work was suspended for the winter season Miller Brothers had completed 87% of unclassified excavation called for by its contract and 77% of its total contract work. The grading was substantially completed, the bridges were substantially completed and while there were some gaps in the macadam pavement the greater part of it had been laid.

In March, 1936, the east branch of the Ausable overflowed its right bank at a bend upstream from new bridge 5. The waters spread over nearby low lands, as they had done in previous years on occasions of heavy rains or seasonal runoffs. They were impounded by the newly constructed highway embankment which had been built in a straight line across those low lands to supersede a winding and low lying old town road. The waters rose above the level of the new highway, overflowed it and washed out the finished shoulders and earth embankment on its westerly side for a distance of about 700 feet. The washout destroyed both macadam courses of the highway to a maximum width of 0.8 feet for the same distance. After the flood waters had subsided it became evident that numerous bars

of stone, gravel and sand had partially reformed in the river and stream beds in areas where the contractor had, in 1935, excavated and removed similar deposits. After learning of the damage to the roadway and the refilling of the channels the contractor, by letter dated April 9, 1936, inquired of the State's division engineer "what provision you will make to compensate us for replacing the highway in the condition we left it last fall; also for re-excavating the river channel, should we be required to do so, as we cannot assume the cost of performing this work without your agreement to pay therefor." (Ex. 46.)

To this the State's district engineer replied:

"The damage to your work which has occurred is, in my opinion, only that which should be normally expected from the ravages of winter in a northern territory. It is incumbent upon you, as contractor, to complete the project in accordance with plans and specifications, and if in that pursuit circumstances incidentally require restoration of such portions as you neglected to protect throughout the period of suspended operations, it must be accomplished at your expense.

"I shall make no provision whatsoever to compensate you for what you term ' replacing the highway in the condition we left it last fall.' " (Ex. 47.)

There followed an extended correspondence (Exs. 48–53) in which the contractor took the position that without assurance that it would be compensated for restoring the washed-out roadway and re-excavating the channel it would regard the contract as breached and the State's engineer "advised that any work in connection with this contract, which has been destroyed or damaged through fault of the State, will be a charge of this Department for which you will receive pay without dispute." (Ex. 53.)

Miller Brothers did not resume work on the contract and ultimately, pursuant to notice, the State cancelled it by order dated May 28, 1936, and relet the work to Zoli for completion.

The pleading asserts that the damage to the highway and the refilling of the river channel were due to the faulty and improvident design of the State in its plans and contract for the construction undertaken. In the correspondence with the district engineer the contractor asserted that "The damages to the macadam were solely due to the fact that the State had failed to provide for a grade high enough to avoid the effect of the usual spring freshets in this valley." (Ex. 50.) How-

ever, the theory advanced upon the trial is that the grade was too high and that the new highway embankment acted as a dike and impounded the waters and that the culverts, planned and built, were insufficient and inadequate to provide an outlet for them. There is also complaint that a greater amount of excavation should have been planned for the stream channels and that more protection for the highway embankment should have been planned by way of riprap or retaining walls.

After careful consideration of the extended engineering testimony we have come to the conclusion that the claimant has failed to establish by a fair preponderance of the evidence that the highway was not properly designed or planned and we refuse claimant's requests so to find. It does not necessarily follow from that conclusion, by itself, that the contractor was not entitled to a supplemental agreement. Other factors must be considered. The contract contained the following provisions:

" 3. The Contractor further agrees that he is fully informed regarding all of the conditions affecting the work to be done and labor and materials to be furnished for the completion of this contract, and that his information was secured by personal investigation and research and not from the estimates of the State Department of Public Works, Division of Highways; and that he will make no claim against the State by reason of estimates, tests or representations of any officer or agent of the State."

" 6. The Contractor further agrees that all damages of whatever nature resulting from the work or from the negligence, non-feasance, misfeasance or malfeasance of any officer, agent or employee of the State, or Department or Division thereof, or resulting to the work during its progress from whatever cause shall be borne and sustained by him, and that all work shall be solely at his risk until it has been finally inspected and accepted by the Commissioner of Highways."

Admittedly, the contractor was aware of the physical conditions under which the work was to be performed. The mountainous terrain and the drainage area of the Ausable and its tributaries were apparent. The action of the river in times of high water was well known in the community and ascertainable upon inquiry. The effects of such action and the pattern of the overflow course were evident to the observer. Under all the circumstances, the question of whether or not the repair of the washed-out road and the redoing of the channel excavation were the liability of Miller Brothers under the terms of the

contract, or were extra work for the performance of which the contractor could not be compensated without a supplemental agreement, was fairly debatable. This is borne out by an examination of the language of the entire correspondence. This discloses that the attitude of the engineer was not arbitrary but conciliatory. The statement in the engineer's first reply, hereinabove quoted, to the effect that he would make no provision to compensate for " replacing the highway " may be cited against this proposition. But it is evident that the contractor did not at the time interpret that statement as an absolute rejection of its request for extra pay. Thereafter there was an attempt at negotiation by both parties to the controversy. Here was an honest dispute. It cannot be said that what the engineer required was " so palpably and manifestly beyond the provisions of the contract " that the contractor was justified in refusing to obey. (*Borough Constr. Co.* v. *City of New York*, 200 N. Y. 149 [1910].) The work directed by the engineer was not any different than that which the contractor had agreed to do, which was to excavate a channel and build a highway. The contractor had further agreed that " all damages of whatever nature * * * resulting to the work during its progress from whatever cause shall be borne and sustained by him ". If Miller Brothers had adopted the construction of the contract placed upon it by the State's engineer and had proceeded to do the work, under protest, that corporation would not have lost its right to subsequently justify its position. (*Collins* v. *State of New York*, 259 N. Y. 200 [1932].) The work of restoring the roadway and re-excavating the channel was slight in relation to the whole contract and in relation, also, to the work which Miller Brothers had already performed. This, as before stated, was of the value of $221,516.43 of a total contract price of $273,542.95. As we shall see later, Miller Brothers had already expended upon the construction a sum far in excess of the contract figure. As to the expense of replacing and repairing the washed out roadway the claimant's proof, by the opinion of an expert witness, is that the cost would be $1,551.74, including overhead and profit. Actually, the State paid Zoli $800 for this restoration work. As to the expense of re-excavating the channel it was, of course, difficult to determine how much gravel had been redeposited by the flood. Miller Brothers had not entirely completed the channel excavation. The proofs are that at most the contractor may have excavated, in 1935, 6,499 cubic yards more than it was credited with. Or the amount may have

been only 3,312 cubic yards. The contract price was fifty cents per cubic yard. Zoli's contract price for unclassified excavation was twenty-five cents per cubic yard. It was not in the interest of the State of New York and it was not in the interest of the contractor that such slight additions to the work " should be regarded as altering the original contract and requiring the making of a new." (*Kent Constr. Co.* v. *State of New York*, 212 App. Div. 197, 204 [1925].) We reach the conclusion that in this case the contractor, by refusing to proceed with its work became a defaulter and that Miller Brothers, not the State of New York, breached the contract. We have come to this determination without consideration of the financial difficulties which beset this corporation at the very time when it was negotiating for a supplemental agreement. However, developments on the trial afforded an explanation of the contractor's default. They merit discussion.

As previously reported, the balance of retained percentages due Miller Brothers was disbursed by the State Comptroller to various creditors and lienors pursuant to a judgment of the Supreme Court, Westchester County, entered April 8, 1940, in an action brought by The County Trust Company of White Plains for the foreclosure of an assignment of moneys due and to become due on the contract. That assignment was made December 10, 1934, immediately after the contract for State Highway No. 8478 was let to Miller Brothers. Moneys for the performance of the work to be done under the contract and under other contracts were advanced by the bank to Miller Brothers. On February 5, 1935, the corporation owed the bank $70,108.53. Between that date and May 12, 1936, total advances by the bank to Miller Brothers were $263,633.20. These loans were also secured by chattel mortgages upon the contractor's equipment. On October 15, 1935, all of the contractor's equipment was seized by the Sheriff of Essex County on a warrant of attachment in an action brought by a creditor, Socony Vacuum Oil Company, in which action judgment was recovered on November 9, 1935, and thereafter execution was issued. On May 15, 1936, the Supreme Court, Albany County, decreed that the Sheriff of Essex County was not authorized to hold the attached property and directed the Sheriff to deliver it forthwith to The County Trust Company. It appears that the contractor was permitted to use the seized equipment between the date of seizure and the closing down of the job for the season, a period of two weeks, October 15th, to October 31st. There was nothing

unusual in that arrangement as the suit by Socony was then pending and had not yet been resolved into judgment. It does not follow that Miller Brothers would have been allowed to retain control over its equipment and machinery and to use it in May, 1936. Quite the contrary appears.

Claimant's counsel argues that the steps taken by The County Trust Company were not acts in hostility to the contractor but the record defeats his argument. Miller Brothers was dissolved as a corporation pursuant to the laws of Connecticut in 1937. Those statutes provide that dissolved corporations shall continue to exist as far as may be necessary to enable them to prosecute and defend suits by or against them, to close up their affairs and distribute their assets (Gen. Stat. of Conn., §§ 3373, 3389). Subsequent to 1937, the exact date not appearing, Miller Brothers brought suit in the Supreme Court, Westchester County, against the said The County Trust Company and others alleging conversion of its equipment of the value of $300,000, to its damage in the amount of $700,000. That was the first cause of action pleaded. The plaintiff also pleaded fraud and deceit in inducing it to execute certain alleged chattel mortgages and also demanded an accounting. On February 25, 1943, the said action was settled and The County Trust Company paid Miller Brothers $15,000 in cash, delivered to it a quitclaim assignment, hereinafter described, cancelled and delivered thirty demand promissory notes of the value of $70,000 and also delivered a general release to the corporation. In the action thus settled this claimant, Isidor Michael, was associated as an attorney for the plaintiff corporation and he swore that he was its secretary in verifying a bill of particulars. He was present at the settlement.

Claimant's counsel asserts that proofs of the foregoing events were interposed by the Attorney-General to becloud the issues. We regard them as clearing the atmosphere which prevailed at Keene Valley in the spring of 1936. Acts which are not hostile do not often lead to suits for conversion wherein large sums are demanded as damages. We are confident that they never result in settlement of such suits for such valuable considerations as passed from The County Trust Company to the liquidators of the extinct Miller Brothers corporation on February 25, 1943. But we do not need to rely on the records and exhibits presented by the defense. Further light on the financial plight of Miller Brothers at the end of the 1935 working season is reflected from documents put in evidence by the claimant him-

self in support of his demand for damages in *quantum meruit*. These were a cost record, a profit and loss statement and a list of accounts payable. The witness Austin, the corporation's treasurer, testified that he prepared these exhibits from Miller Brothers' books of original entry, which were not produced at the trial. The exhibits were received over the vigorous objection of the Attorney-General and upon the insistence of the claimant's counsel. They show that on October 31, 1935, Miller Brothers had expended on contract S. H. No. 8478 the sum of $287,887.92; that of that sum it then owed $38,715.31 in open accounts payable and that it had already sustained a net loss of $73,303.20 on the Keene Valley job. In pleading *quantum meruit* the claim filed set forth the above figure of $287,887.92 as the fair and reasonable value of the materials furnished and work performed by Miller Brothers under the contract prior to its alleged breach. Upon the trial claimant moved to amend the claim to conform to the proofs presented and now demands a finding that the fair and reasonable cost of performance to October 31, 1935, was $416,764.92. Claimant's demand for damages is the sum of $225,689.14 with interest.

It clearly appears that Miller Brothers corporation was insolvent in the spring of 1936. Insolvency, in and of itself, is not equivalent to a breach of contract. (*Pardee* v. *Kanady*, 100 N. Y. 121 [1885]; *Vandegrift* v. *Cowles Engineering Co.*, 161 N. Y. 435 [1900]; *Phenix Nat. Bank* v. *Waterbury*, 197 N. Y. 161 [1910].) And it does not relieve the other party from performance. (*Hanna* v. *Florence Iron Co.*, 222 N. Y. 290 [1918].) It does not appear that the State's representatives knew of Miller Brothers' financial condition. Mere doubts of the contractor's insolvency would not have justified cancellation of the contract. (3 Williston on Contracts [Rev. ed.], § 880; Restatement, Contracts, § 287.) Nevertheless, the burden is upon this claimant, who seeks to maintain an action for the breach, to establish that Miller Brothers was ready, able and willing to perform. (*Vandegrift* v. *Cowles Engineering Co.*, *supra.*) And the question of being so able is one to be determined by the triers of fact. (*New England Iron Co.* v. *Gilbert Elevated R. R. Co.*, 91 N. Y. 153 [1883].) We find as a fact that Miller Brothers Construction Co., Inc., was not in that position of readiness in May, 1936.

To sum up the issues on the merits of this controversy we find and decide: (1) that the claimant has failed to establish that the plans and design for the highway were faulty or inade-

quate; (2) that, whatever the cause of the damage to the roadway and the refilling of the channel, the claimant has failed to establish that a supplemental agreement was required; (3) that the State of New York did not breach its contract; (4) that the contractor was not justified in its refusal to. complete performance; (5) that the contractor was not, in fact, ready, able and willing to perform; (6) that the contract was breached by Miller Brothers. Upon these findings there can be no recovery.

Because there seems to be some misunderstanding resulting from the final audit by the State Highway Department and by the State Comptroller of Miller Brothers' account for work in place October 31, 1935, and even a suggestion by the Attorney-General in his brief that perhaps as much as $4,000 may be due thereon, the following comment becomes advisable. In computing the amount of $30,440.63 charged against Miller Brothers' retained percentages as excess cost of the completion contract there were included items 180-A to 180-F, totaling $1,575. Of these, item 180-A was $800 for completing and restoring the damaged highway, work which Miller Brothers had once performed. While claimant has failed to establish that the contractor was entitled to a supplemental agreement, it may be that it would not have been required to repair the highway without compensation. If so, the sum of $800 ought not to have been added to the completion costs. Items 180-B to 180-F were for work at the various bridges and it does not clearly appear that they were duplications of work which Miller Brothers had previously performed. Hence they may be disregarded. It does appear that in computing the amount of channel excavation done by Miller Brothers, the figure in estimate 18 was short 3,312 cubic yards and perhaps as much as 6,499 cubic yards. Miller Brothers was entitled to be credited with and paid for all channel excavation performed up to October 31, 1935. It is obvious that if the deduction of $800 ought not to have been made and if there ought to have been increased credit for say 6,499 cubic yards. of excavation at fifty cents per cubic yard the sum of $20,556.55, computed as the balance of retained percentages, would have been increased approximately $4,000. Whatever the correct amount of retained percentages, it represented pay for work done under the contract at contract prices. It did not represent damages for the breach. All moneys due and to become due on monthly and final estimates, or the release of any retained percentages, were assigned by the assignment by Miller Brothers to The County Trust Com-

pany which was executed December 10, 1934, and which is Exhibit A. That assignment was foreclosed in an action brought in Supreme Court, Westchester County, in which judgment was entered April 8, 1940. That judgment directed the distribution of the sum, which the State of New York admitted it had in its possession, to the plaintiff and to various creditors and lienors and also awarded them, severally, deficiency judgments. Any increase, whether it be $4,000 or more or less, in the amount of retained percentages was properly the subject of the judgment of April 8, 1940. It is not the subject of the cause of action herein sued upon. Moreover, claimant does not in any way derive his title from Exhibit A, the assignment of December 10, 1934. He has not asserted that he does.

We come at last to the consideration of the reasons why this claimant, Isidor Michael, is barred from recovering herein. He was substituted as party claimant by order dated August 16, 1943, and by virtue of an assignment to him by Miller Brothers made, executed and delivered on February 26, 1943, the day after the settlement of the suit for conversion to which we have hereinabove made reference. We have already reported that, as part of that settlement, The County Trust Company delivered to Miller Brothers a quitclaim assignment. The document now becomes important. It is in evidence as Exhibit W. It is dated January 30, 1943, and was executed the same day, although it was not delivered until February 25, 1943. It was offered in evidence by the Attorney-General and no objection to its being received was made by claimant's counsel. It is the document referred to in Exhibit 14-a which is the assignment from Miller Brothers to this claimant, upon which he stands before this court. By Exhibit 14-a Miller Brothers granted, assigned and conveyed unto Isidor Michael " All the right, title and interest of the said Miller Brothers Construction Co., Inc. in and to the claim filed in the Court of Claims by Miller Brothers Construction Co., Inc., against the State of New York; reference is hereby made to an assignment dated January 30, 1943 executed by the County Trust Company for a more particular description thereof ".

On its face that transfer is valid as against the assignor and payment to or recovery by the assignee protects the defendant, the State of New York. The consideration paid by Michael is of no moment and is not subject to inquiry. We so ruled upon the trial over repeated objections by the Attorney-General, who finally conceded that " it matters not what he paid for it ". The

rule is of long standing and many authorities could be cited. Only one is necessary. (*Sheridan* v. *Mayor of City of New York,* 68 N. Y. 30 [1876].)

But there is a distinction between an inquiry into the consideration paid for the assignment and the right to be informed as to the subject matter thereof. It is claimant's duty to satisfy this court that what he owns is the chose in action herein sued upon. Accordingly, after extended argument, the court received in evidence, over the objection of claimant's counsel, documents known as Exhibit X and Exhibit Y. Exhibit Y is a memorandum of the settlement effected on February 25, 1943. Exhibit X is the general release then made, executed and delivered by Miller Brothers to The County Trust Company. This general release acknowledges the transfer by the bank to Miller Brothers of '' a quitclaim assignment by said The County Trust Company to said Miller Brothers Construction Company, Incorporated of all right, title and interest which said The County Trust Company has under and by virtue of a certain assignment made on or about July 6, 1936, by said Miller Brothers Construction Company, Incorporated to said The County Trust Company of any and all sums of money which may be awarded to said Miller Brothers Construction Company, Incorporated by the Court of Claims of the State of New York arising out of or by reason of an action brought on behalf of said Miller Brothers Construction Company, Incorporated against the State of New York arising out of contract between the State of New York, Division of Highways and said Miller Brothers Construction Company, Incorporated providing for the construction of public improvement, known as Contract NRH 8478, Keene Valley-Holts Corners, Essex County, New York (said assignment of said sums of money made on or about July 6, 1936, being subject to the lien of George M. Simon, the attorney for said Miller Bros. Construction Co., Inc., to the extent of Fifty (50) per cent thereof),'' The quitclaim assignment, Exhibit W, contains the identical language above quoted except that it omits any reference to an assignment made on July 6, 1936, by Miller Brothers to The County Trust Company.

It becomes evident that the assignment of July 6, 1936, is an important link in claimant's chain of title to the demand he seeks to collect from the State of New York. Apparently that document was not available to the Attorney-General upon the trial. And claimant not only did not produce it, but his counsel objected to questions directed to finding out whether or not it

was in existence as recently as July 22, 1942. As it has not been produced we are not informed of its terms except for the recitals in Exhibits W and X. In the absence of proof, it is as proper to assume that the assignment was absolute as to assume that it was conditional. If it was a mere pledge it would be in the claimant's interest to produce it because it would disclose that Miller Brothers retained an interest in the claim against the State which it could assert. (*Simson* v. *Satterlee,* 64 N. Y. 657 [1876]; *Peck* v. *Yorks,* 75 N. Y. 421 [1878]; *Hawkins* v. *Mapes-Reeves Constr. Co.,* 82 App. Div. 72 [1903], affd. 178 N. Y. 236; *Mercantile Trust Co.* v. *Gimbernat,* 143 App. Div. 305 [1911], affd. 206 N. Y. 722.)

But if the assignment was absolute Miller Brothers ceased to be the owner of the cause of action herein sued upon on July 6, 1936. From that date until February 25, 1943, claimant's assignor had no right, title or interest in or to this claim. It was in that interim that Miller Brothers, by A. C. Sternberg, president, on August 18, 1936, verified the notice of intention which was filed on August 25, 1936. It was also during that interim that the same officer on March 23, 1939, verified the claim which was filed on March 24, 1939. Before those acts of verification and filing had taken place the corporation had divested itself of the chose in action. The statement in the pleading to the effect that the claim had not been assigned was untrue. Neither in August, 1936, nor in March, 1939, was Miller Brothers the real party in interest. (Civ. Prac. Act, § 210.) From July 6, 1936, to February 25, 1943, payment to or satisfaction by The County Trust Company, only, would be a full and complete satisfaction of the claim. (2 Carmody on New York Pleading and Practice, §§ 501, 502.) Thus the rule of *Sheridan* v. *Mayor of City of New York* (*supra*), must be again applied but this time against the interest of the claimant whose rights must be determined in accordance with the situation existing at the time this action was commenced. (*Dean* v. *Metropolitan Elevated Ry. Co.,* 119 N. Y. 540 [1890].) At that time, no cause of action existed in favor of Miller Brothers, the claimant's assignor, and an award to that corporation, if merited, would not have protected the defendant, the State of New York. The reassignment to Miller Brothers, Exhibit W, did not have the retroactive effect of creating one. (*Walsh* v. *Woarms,* 109 App. Div. 166 [1905]; *Foster* v. *Central Nat. Bank,* 183 N. Y. 379 [1906]; *Fairchild* v. *Scarsdale Estates,* 166 App. Div. 616 [1915].) Nor does the present assignee, Isidor Michael, stand in any better position.

Usually the defense that plaintiff is not the real party in interest must be affirmatively pleaded by the defendant. (*Collins* v. *McWilliams,* 185 App. Div. 712 [1919]; *Massi* v. *Alben Builders,* 270 App. Div. 482 [1946], affd. 296 N. Y. 767.) However, the application of that rule to cases in the Court of Claims seems to be negated by rule 13 of the Rules of the Court of Claims which, up to now, has been applied to absolve the Attorney-General from pleading affirmative defenses. (See *Podzuweit* v. *State of New York,* 192 Misc. 528, and cases therein mentioned.) If rule 13 of the Rules of the Court of Claims is not efficacious in this respect, this claimant, by his silence, has waived the requirement to plead defect of parties. He was not silent but vocative in respect to Exhibits X and Y. However, as we have already shown, those exhibits are necessary complements to Exhibit W, to which claimant did not object and, in turn, to Exhibit 14-a upon which claimant came into court. Thus, the defendant, the State of New York, is not precluded from taking advantage of the situation. (*Whiting* v. *Glass,* 217 N. Y. 333 [1916].)

Upon the whole record this claim must be dismissed. Findings of fact and conclusions of law are signed and filed herewith.

(Supplemental opinion, June 25, 1948.)

After the entry of our decision, dated April 28, 1948 (192 Misc. 464), by which we dismissed the above-entitled claim, claimant moved to reopen the trial for the purpose of offering in evidence the missing assignment of July 6, 1936. The motion was granted and we now have before us a document which is Exhibit R-1. Although the day of the month is missing both from the body of the instrument and from the acknowledgment and although the name of A. C. Sternberg, the president of the corporation, is omitted from the acknowledgment (all of which omissions were supplied in the copy attached to the motion papers), the assignment is probably valid and binding as between Miller Brothers and The County Trust Company and it is unlikely, in view of the supporting testimony of George M. Simon, that its validity can be attacked by this defendant. Exhibit R-1 is not the identical document delivered to The County Trust Company but one of triplicate originals, this copy having remained in Mr. Simon's possession from July 6, 1936, to the present time, including the period of the trial. However, the Attorney-General has had ample opportunity to insist that the claimant produce the document actually

used in the transaction between Miller Brothers and The County Trust Company, if it still exists, or to explain what happened to it, if it does not. The officers and the records of the bank are presumably available to subpœna. But the Attorney-General has waived his right to object that Exhibit R-1 may be secondary evidence.

By this instrument Miller Brothers assigned to The County Trust Company " Any and all sums of money which may be awarded to us by the Court of Claims of the State of New York, arising out of or by reason of an action brought in behalf of the undersigned against the State of New York."

This would appear to be an assignment of the cause of action. However, the document contains this clause: " This assignment shall be a lien subordinate only to the lien of the attorney for the undersigned, George M. Simon, Esq., to the extent of fifty (50) percent of the monies awarded, for his services in connection with the prosecution of said action."

The County Trust Company already had an assignment of the moneys due and to become due on the contract. (Exhibit A.) It is urged that Exhibit R-1 was merely further collateral for advances already made by the bank to the contractor. This is a fair argument but the question in not free from doubt. Whoever drafted Exhibit 14-a apparently regarded Exhibit W as an absolute assignment because Exhibit W is incorporated in Exhibit 14-a by reference. Inasmuch as the rights of the assignor, The County Trust Company, which executed Exhibit W, were founded solely on this most recent exhibit, Exhibit R-1, it would seem that at the time of the transaction and also at the time of the settlement memorialized in Exhibit Y, everybody concerned regarded Exhibit R-1 as an absolute assignment of the cause of action. In turn it is only by virtue of Exhibit 14-a that the claimant Michael has any standing in court.

However, because of the words " This assignment shall be a lien ", we resolve the question in claimant's favor and hereby hold that the assignment was not absolute but conditional. We do so on the theory that Miller Brothers did not by Exhibit R-1 divest itself of all control and right to the cause of action. (*Spencer* v. *Standard Chemicals & Metals Corporation*, 237 N. Y. 479 [1924]. See cases therein cited.) Accordingly, we amend our decision by striking out Findings of Fact 59, 66, 67 and 68 and Conclusions of Law VIII, IX and X. In place of Finding 59, we make new findings which recite the execution and delivery of Exhibit R-1. We adopt a conclusion

of law that on March 24, 1939, when Miller Brothers Construction Co., Inc., filed the claim herein, it had legal title to the cause of action.

One further comment. Exhibit 14-a, the assignment to claimant Michael, was executed on February 26, 1943, by Joseph Davison, as president, and by Robert G. Miller, as secretary, of Miller Brothers Corporation. Previously, and up to and including March 23, 1939, when the claim was verified, A. C. Sternberg had signed, acknowledged and verified documents as president of the corporation. (Findings 61, 62.) On December 27, 1940, and again on November 24, 1942, Michael had sworn he was secretary. (Finding 54.) Sternberg had died prior to February 25, 1943. (Exhibit Y.) The corporation was dissolved in 1937. (Finding 50.) How or when Davison and Miller became president and secretary of the defunct corporation has not been disclosed. Perhaps we need not know. Exhibit 14-a appears to be valid on its face. In the absence of proof to the contrary, we assume that there has been compliance with the Statutes of Connecticut.

In conclusion let it be said that in the interest of brevity we have omitted certain details from this memorandum. We refer readers to our previously published opinions for further recitals of the ramifications of this prolonged and involved litigation.

With the modifications hereinabove indicated let decision and judgment be entered dismissing the claim.